## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **JOHN ROSWELL,**<br>6357 Old Washington Road,<br>Elkridge, Howard County, Maryland 21075 )<br><br>　　　**Plaintiff,** )<br><br>v. )<br><br>**CITY OF BALTIMORE**<br>Serve on: James L. Shea, City Solicitor<br>101 City Hall<br>100 N. Holliday Street<br>Baltimore, MD 21202; )<br><br>**BRANDON SCOTT,** in his official capacity<br>as Mayor of Baltimore<br>250 City Hall<br>100 N. Holliday Street<br>Baltimore, MD 21202 )<br><br>Serve on: James L. Shea, City Solicitor<br>101 City Hall<br>100 N. Holliday Street<br>Baltimore, MD 21202; )<br><br>**ALICE KENNEDY**, in her official capacity<br>as Commissioner of the Baltimore City<br>Department of Housing and Community<br>Development,<br>417 E. Fayette Street<br>Baltimore, MD 21202 )<br><br>Serve on: James L. Shea, City Solicitor<br>101 City Hall<br>100 N. Holliday Street<br>Baltimore, MD 21202 )<br><br>and | **Case No. _____**<br><br><br>**COMPLAINT FOR CIVIL RIGHTS<br>VIOLATIONS, INJUNCTIVE<br>RELIEF, DECLARATORY<br>JUDGMENT, AND DAMAGES** |

**CHRISTOPHER JOHNSTON,** in his                )
official capacity as Inspector of the Baltimore   )
City Department of Housing and Community          )
Development,                                       )
417 E. Fayette Street                             )
Baltimore, MD 21202                               )
                                                  )
Serve on: James L. Shea, City Solicitor           )
101 City Hall                                      )
100 N. Holliday Street                             )
Baltimore, MD 21202.                              )
                                                  )
       **Defendants.**                              )

COMES NOW the Plaintiff, John Roswell, by and through counsel, and for his Complaint, states and alleges as follows:

## INTRODUCTION

1.    This is a civil rights action brought pursuant to 42 U.S.C. § 1983 challenging the actions of the City of Baltimore with regard to Plaintiff's expressive activities on public ways of the City.  Defendants cited and fined Plaintiff for placing free-standing A-frame signs next to him while he engaged in political and religious speech on a public sidewalk. Defendants told Plaintiff that he needed two permits to place his signs on the sidewalk, even though he was standing with the signs the entire time.  (The relevant ordinances, regulations, and Defendants' processes prohibiting Roswell from, or requiring permits prior to, using the A-frame signs are collectively referred to herein as the "Regulations" or "Defendants' Regulations.")

2.    The process to obtain each required permit is costly and burdensome. Further, said permits can be granted, denied, or revoked at the unfettered discretion of the

City of Baltimore and its employees.  Finally, Plaintiff could not even apply for either of the two permits as both require the consent of the adjacent landowner—in this case, that landowner is an abortion provider which is hostile to Plaintiff's expressive activities.

3.      Plaintiff seeks a declaration that the Defendants' Regulations violate the First and Fourteenth Amendments to the United States Constitution as interpreted and applied by Defendants, a preliminary injunction, and a permanent injunction prohibiting Defendants from enforcing their Regulations against Plaintiff for his Constitutionally protected expressive activities.  In addition to declaratory and injunctive relief, Plaintiff seeks damages for the past violations of his First Amendment rights.

## PARTIES

4.      Plaintiff John Roswell is a resident of Elkridge, Howard County, Maryland.

5.      The City of Baltimore is a municipal corporation duly incorporated and authorized under the laws of the State of Maryland, pursuant to its Charter.  Further, the City of Baltimore is authorized under the laws of the State of Maryland to maintain its Department of Housing and Community Development which acts as the City's agent for enforcement of its regulations dealing with permitting signage on its public ways.

6.      Defendant Brandon Scott is the Mayor of Baltimore, Maryland.  He is sued in his official capacity.

7.      Defendant Alice Kennedy is the Commissioner of the Baltimore City Department of Housing and Community Development ("the Department"), which imposed, and continues to impose, the Regulations on Plaintiff.  She is sued in her official capacity.

3

8.     Defendant Christopher Johnston is an inspector with the Department.  He was the inspector who originally threatened Plaintiff with a citation for placing signs on the sidewalk without a permit and ultimately cited him for the same activity.  He is sued in his official capacity.

## JURISDICTION AND VENUE

9.     This action raises federal questions under the First and Fourteenth Amendments to the United States Constitution and under federal law, 28 U.S.C. §§ 2201 and 2202 (Declaratory Judgments), as well as 42 U.S.C. §§ 1983, 1988, and 1920.

10.    This Court has jurisdiction over these federal claims under 28 U.S.C. §§ 1331 and 1343.

11.    This Court has authority to grant the requested injunctive relief under 28 U.S.C. § 1343(3), the requested declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, the claim for damages under 42 U.S.C. § 1983, and Plaintiff's prayer for costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and 28 U.S.C. § 1920.

12.    Venue is proper in the District of Maryland pursuant to 28 U.S.C. § 1391, because the claims arose in this District and Defendants are located in this District.

## FACTUAL ALLEGATIONS

13.    For nearly the last five years, Plaintiff has peacefully exercised his First Amendment rights on the public sidewalk near a Planned Parenthood facility, located at 330 N. Howard Street in Baltimore.  His activities consist primarily of standing on the sidewalk near the facility to communicate with women considering abortions as they enter or exit the facility.

4

14.     Plaintiff's purposes include presenting information regarding abortion and its alternatives, as well as a visible demonstration of his deeply held religious convictions that human lives are being terminated inside the facility. He seeks to do so in a kind and caring manner and attempts to establish a personal rapport with each woman he encounters.

15.     Prior to the unlawful activity of Defendants, Plaintiff relied upon several stand-alone, A-frame signs to help him communicate this information. The signs include statements such as "Unborn Babies Are Human and Feel Pain," along with pictures of an unborn child in utero at 6 weeks and 9 weeks gestation. Through years of similar activities, Plaintiff found that these types of signs effectively communicated without interfering with the personal, one-on-one discussion he believes that he must have with women considering abortion. The signs are only 30 inches wide, 34.5 inches tall, and 24 inches deep. They take up no more space on the sidewalk than a person standing there would. They do not prevent anyone from walking on the sidewalk as normal.

16.     On or about January 22, 2020, Plaintiff was standing near the Planned Parenthood facility at 330 N. Howard Street with several A-frame signs on the sidewalk near him. An inspector from the Department told Plaintiff that he needed a permit to place his signs on the sidewalk and that placing the signs in this manner without a permit would result in a $500 per day fine.

17.     After this warning, Plaintiff investigated the process for obtaining a permit. Plaintiff learned that, to display A-frame signs on the sidewalk where he stood, he was told by a Baltimore City Public Information Officer that he would need two separate permits: a "Minor Privilege" permit and a sign permit. (Ex. A, Kevin Nash Emails, p. 1.) Both

permits involved filing fees, which total more than $100. (Ex. B, Minor Privilege Permit Fee Schedule, p. 8; Ex. C, Sign Code Fees, p. 3, §109.6.1(j).) The Minor Privilege permit application must be reviewed by no less than four different city departments that each have review times between three and six weeks, and then be approved by the Right of Way Services Division Chief, then the Department of Transportation Director, and then by the Board of Estimates. (Ex. D, Application for Minor Privilege, p. 3.) Every city employee who considers the permit has a host of criteria he or she can apply to approve or deny, most of which criteria are not readily available to the public. The employees of the City of Baltimore have considerable, unbridled discretion in determining whether to grant or deny a permit, or whether to later revoke a permit. For example, the application form for the "Minor Privilege" permit, states that the approving body "reserves the right, *in its discretion*, to terminate the privilege at any time. . . ." (Ex. D, p.1, emphasis supplied.)

18.     Even if Plaintiff could overcome these difficulties, he still could not comply with Defendants' requirements because the applications for both permits require that the adjacent property owner consent to the permit. For example, to even apply for a sign permit, the applicant must check a box to swear under the penalty of perjury that he or she "is the owner of the subject property, or is the duly authorized agent of the owner with full and specific consent and authorization to act for the owner for this application." (Ex. E, Sign Permit Application Webpage screenshot.) That box must be checked to proceed with the application.

19.     There is no way for Plaintiff to become authorized as the agent of the owner with full and specific consent. The building at 330 North Howard Street is owned by

6

Planned Parenthood of Maryland, Inc., which operates the abortion facility at that address. Employees and volunteers at the facility often verbally attacked Plaintiff. Employees and volunteers at the facility have on numerous occasions stepped immediately in front of Plaintiff, within inches of his face, physically have butted into Plaintiff and routinely have attempted to provoke him, unsuccessfully, from his peaceful witness. These employees and volunteers at the abortion facility on numerous occasions have called the police (although on arriving, the police have never indicated that Plaintiff was breaking any laws whatsoever).

20.    After determining that he had no likelihood of receiving a permit for his signs, Plaintiff, through counsel, sent a detailed letter to counsel for the City of Baltimore on June 26, 2020, explaining why the City's requirement violated his constitutional rights. (Ex. F, Letter to Attorney Byrne.) After receiving no response, Plaintiff notified the City that he would begin placing his signs on the sidewalk again on July 13, 2020. (Ex. G, Email to Attorney Byrne.) Again, Plaintiff received no response, so he returned with his signs on that date. (Plaintiff also had at least one sign placed around a city pole. That sign is not the subject of this action.)

21.    On July 23, 2020, Defendant Christopher Johnston cited Plaintiff with the Violation of Article 19, Section 45-2 of the Baltimore City Code. (Ex. H, Citation.) The violation listed on the citation was "Prohibited posting of signs on public property." The citation carried a fine of $500.00.

22.    Plaintiff timely appealed this citation to the Environmental Control Board, as provided by Baltimore City Code. Prior to the administrative hearing, counsel for

Plaintiff repeatedly requested that Defendant Christopher Johnston be present for the hearing, as well as an official from the City who would be able to testify about the permit application process. (Ex. I, Emails Regarding Witnesses.)  As the agency appeal process did not allow subpoenas, Plaintiff could only request that such individuals attend.

23.     Despite the Plaintiff's request, the only witness from the City who appeared at the hearing was an inspector from the Department who had no knowledge of Plaintiff's case other than what was recorded in the case file, nor any knowledge of the permit process. However, even that inspector reiterated in her testimony that Plaintiff's A-frame signs violated the City Code and would be subject to fines unless Plaintiff obtained permits.

24.     The hearing officer for the Environmental Control Board found that Plaintiff violated the City Code in allegedly placing another sign "on and around" City poles. (Ex. J, Opinion.)  The hearing officer expressly declined to make any finding with regard to the A-frame signs, stating "[t]his Hearing Officer makes no determination of the legality of the remaining signs shown in the photographs."  The signs "on and around" City poles are not the subject of this suit.  Despite finding that Plaintiff had violated the City code, the hearing officer reduced the fine from $500.00 to $10.00.

25.     Due to the threats and the citation made by the City of Baltimore, Plaintiff is fearful of exercising his constitutionally protected rights of placing A-frame signs on the sidewalk near where he stands when speaking to people in front of the abortion facility.

26.     Defendants' requirement that Plaintiff obtain permits for his signs—which would not merely be unduly burdensome for him but in fact impossible—inflicts irreparable injury on the First and Fourteenth Amendment rights of Plaintiff.

27.     Plaintiff wishes to resume using his A-frame signs as before.  However, unless and until this Court issues injunctive relief, Defendants will continue to enforce their Regulations through their officers, servants, agents, and employees, further infringing Plaintiff's constitutional rights.

28.     All the acts of Defendants and their officers, servants, agents, and employees, as alleged herein, were done and are continuing to be done under color and pretense of the statutes, ordinances, regulations, policies, customs, and usages of the City of Baltimore and the State of Maryland.

### FIRST CAUSE OF ACTION
### Violation of the Right of Freedom of Speech
### Under the First Amendment to the U.S. Constitution

29.     Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs.

30.     The public ways and sidewalks affected by Defendants' permit requirement are traditional public fora.  Plaintiff's political and religious speech and expressive activities lie at the core of the First Amendment.

31.     Defendants' interpretation and application of their permit requirement impose an unconstitutional restriction on constitutionally protected speech in traditional public fora.

32.     As interpreted and applied by Defendants, their Regulations do not provide valid time, place, and manner restrictions on speech.

33.     As interpreted and applied by Defendants, their Regulations are not narrowly tailored to serve any asserted government interest.

34.     As interpreted and applied by Defendants, their Regulations fail to provide ample alternative avenues of communication for Plaintiff to reach his intended audience.

35.     Defendants' interpretation and application of their Regulations impose an unconstitutional tax on Plaintiff's free speech.

36.     Defendants' interpretation and application of their Regulations place unbridled discretion in the City employees' hands that allow for censorship of Plaintiff's speech.

37.     Defendants' Regulations are unduly vague.

38.     Defendants' interpretation and application of their Regulations are discriminatory because they prohibit Plaintiff from engaging in speech and other expressive activities in traditional public fora under circumstances where the owner of an adjacent building would not be similarly prohibited.

39.     Defendants' interpretation and application of their Regulations constitute viewpoint discrimination because they facilitate speech on only one side of the abortion debate.

40.     No compelling, substantial, or even legitimate governmental interest exists to justify Defendants' restrictions on Plaintiff's speech in traditional public fora.

41.     Defendants' interpretation and application of their Regulations are not the least restrictive means to accomplish any permissible purpose and restrict substantially more speech than necessary.

10

42.     As interpreted and applied by Defendants, their Regulations requirement violate Plaintiff's rights to freedom of speech under the First Amendment to the United States Constitution.

43.     As a direct and proximate result of Defendants' actions, policies, practices, and customs as alleged herein, Plaintiff has suffered and will continue to suffer irreparable harm.

44.     Plaintiff has no adequate remedy at law to protect his constitutional right to free speech.

WHEREFORE, Plaintiff respectfully prays that the Court grant the relief set forth hereinafter in the prayer for relief.

### SECOND CAUSE OF ACTION
### Violation of the Free Exercise Clause under the First and
### Fourteenth Amendments to the U.S. Constitution

45.     Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs.

46.     Plaintiff's sincerely held religious beliefs compel him to communicate his views on abortion to others and to engage in expressive activity to that end.

47.     Plaintiff's religious activities are protected by the Free Exercise Clause of the First Amendment to the United States Constitution.

48.     As interpreted and applied by Defendants, their Regulations substantially burden Plaintiff's free exercise of his religious beliefs.

49.     As interpreted and applied by Defendants, their Regulations are not neutral rules of general applicability.

11

50.    On their face and as applied, Defendants' Regulations allow comparable expressive activity by the abortion facility itself (or by other secular actors who obtain the abortion facility's consent), but not Plaintiff's religiously motivated speech.

51.    As interpreted and applied by Defendants, their Regulations are not supported by a compelling governmental interest and are not narrowly tailored in furtherance of any legitimate governmental interest.

52.    As a direct and proximate result of Defendants' actions, policies, practices, and customs as alleged herein, Plaintiff has suffered and will continue to suffer irreparable harm.

53.    Plaintiff has no adequate remedy at law to protect his constitutional right to the free exercise of religion.

WHEREFORE, Plaintiff respectfully prays that the Court grant the relief set forth hereinafter in the prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that judgment be entered in his favor and that relief be granted against Defendants as follows:

A.    That this Court assume jurisdiction over this action;

B.    That the Court enter a Preliminary Injunction preventing Defendants from enforcing their Regulations against Plaintiff for his constitutionally protected speech and expressive activities on the sidewalk adjacent to 330 N. Howard Street in Baltimore, Maryland;

C.    That the Court enter a Permanent Injunction continuing to restrain Defendants from enforcing their Regulations against Plaintiff for his constitutionally protected speech and expressive activities on the sidewalk adjacent to 330 N. Howard Street in Baltimore, Maryland;

D.    That the Court declare the Regulations, as interpreted and applied by Defendants, to be unconstitutional because they violate Plaintiff's freedom of speech and free exercise of religion;

E.    Award Plaintiff money damages, including nominal damages;

F.    Award Plaintiff his costs of litigation, including reasonable attorneys' fees and costs; and

G.    Grant such other and further relief as this Court deems just and proper.

DATED this 10th day of October, 2022.

JOHN ROSWELL, Plaintiff,

BY:

J. CALVIN JENKINS, JR.
Federal Bar No. 00306
409 Washington Avenue, Suite 610
Towson, MD 21204
CPF#: 7512010152
Phone: (410) 296-6822
Fax: (410) 825-7913
jcjenkins@baltimorecountylaw.com

AND

/S/ Cameron E. Guenzel
Nebraska Bar No. 24405*
JOHNSON, FLODMAN,
GUENZEL & WIDGER
1227 Lincoln Mall
Lincoln, NE 68508-2847
Phone: (402) 475-4240
Fax: (402) 475-0329
cguenzel@johnsonflodman.com

/S/ Matthew F. Heffron
Nebraska Bar No. 19225*
THOMAS MORE SOCIETY
10506 Burt Circle/ Suite 110
Omaha, Nebraska 68114
Phone: (402) 952-5415
Fax: (312) 782-1887
mheffron@thomasmoresociety.org

* Pending admission pro hac vice

14