IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JOHN ROSWELL,** | * | |
| **Plaintiff,** | * | |
| v. | * | **Civil Action No. RDB-22-2587** |
| **MAYOR & CITY COUNCIL OF BALTIMORE,** | * | |
| **Defendant.** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

This Court conducted a hearing on April 24, 2023, for arguments concerning Plaintiff John Roswell's Motion for Preliminary Injunction (ECF No. 2) and Motion to Defer consideration of Defendant Mayor and City Council of Baltimore's ("City")[1] Motion to Dismiss or in the Alternative for Summary Judgment ("City's Motion") (ECF No. 6.). (ECF No. 13.)[2] In brief, Plaintiff argued that he was entitled to a preliminary injunction barring the City from enforcing against him certain ordinances prohibiting the use of A-frame signs on public walkways, contending that these ordinances violate his First Amendment rights to free speech and free exercise of religion. (*See generally* ECF No. 2.) Plaintiff also argued that he required discovery in order to respond to the City's Motion. (*See generally* ECF No. 13.) For the reasons stated on the record on April 24, 2023, the Court has DENIED both the Motion

---

[1] On April 24, 2023, the Court dismissed from this case the individually-named Defendants Brandon Scott, Alice Kennedy, and Christopher Johnston, as consented upon by Plaintiff. (ECF No. 23.)
[2] The hearing did not include arguments concerning the City's Motion to Dismiss or in the Alternative for Summary Judgment.

for Preliminary Injunction and the Motion to Defer. (ECF No. 22.) This Memorandum Opinion supplements the basis for those rulings.

## BACKGROUND[3]

Plaintiff John Roswell routinely stands on the sidewalk outside of a Planned Parenthood Facility on N. Howard Street in Baltimore, Maryland, to "communicate with women considering abortions as they enter or exit the facility." (ECF No. 1, ¶ 13.) Plaintiff presents women with "information regarding abortion and its alternatives" and displays a "visible demonstration of his deeply held religious convictions that human lives are being terminated inside the facility." (*Id.* ¶ 14.) To communicate these messages, Plaintiff "relied upon several stand-alone, A-frame signs" propped on the sidewalk directly outside of Planned Parenthood. (*Id.* ¶ 15.) The A-frame signs include statements such as "Unborn Babies Are Human and Feel Pain." (*Id.*) Plaintiff also verbally communicates his messages and distributes leaflets to the women entering and exiting the facility. (*Id.*)

On January 22, 2020, an inspector with the Department of Housing and Community Development warned Plaintiff that he needed a permit to place the signs on the sidewalk and that he would otherwise be fined $500/day for violating a Baltimore City ordinance. (*Id.* ¶ 16.) That code, Baltimore City Code, Article 19 (Police Ordinances) § 45-2 ("Police Ordinance"), states, in pertinent part: "No person may post, place, or affix a sign: . . . (5) in any way that … (ii) protrudes into a street or sidewalk so as to interfere with the safe passage

---

[3] Although the standard of review for a preliminary injunction motion does not require it, in light of the pending Motion to Dismiss or in the Alternative for Summary Judgment (ECF No. 6), this Court "accept[s] as true all well-pleaded facts in [the] complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)).

of the public; or (iii) otherwise poses a hazard to motorists, pedestrians, or cyclists; (6) on any other property owned, leased, or controlled by the City." Plaintiff states that he then discovered that he needed two permits to erect his A-frame signs on the sidewalk to avoid the fine: (1) a "minor privilege" permit and (2) a "sign permit." (*Id.* ¶¶ 16, 17.)[4] He alleges that the filing fees for both permits "total more than $100." (*Id.*) Plaintiff attaches to his Complaint a copy of the application for a minor privilege permit. (*See* ECF No. 1-1 at 25–27.)

Plaintiff protests in front of the Planned Parenthood located at the intersection of Maryland Route 40 and Howard Street, directly in front of the MTA Light Rail Path, and is part of the C-5-HS Zoning District. (*See* ECF No. 8-2 at 4.) In conjunction with the Police Ordinance, Baltimore City Code, Art. 32, § 17-201, only permits an individual to post a sign if the "Table 17-201: Sign Regulations" chart "expressly lists that sign type as allowed within that zoning district" and if "the sign complies will all other requirements of this title applicable to that sign type." For the C-5-HS zoning district, Table 17-201 states that one A-frame sign is allowed per tenant with approval method "A," and a size restriction of 8 square foot per side, with a maximum 4-foot height. Approval method "A" means "allowed." Baltimore City Code, Art. 32, § 1-205(b)(2)(i). The use of A-frame signs is governed by Baltimore City Code, Art. 32, § 17-401 ("Zoning Ordinance"), which states that an A-frame sign is permitted only for "non-residential uses" and: "(i) may only be placed: (A) on the same property as the non-residential use to which it relates, within 30 feet of that use's primary entrance; or (B) on the

---

[4] Plaintiff has not indicated what he means by a "sign permit," and did not provide clarity on this point during the April 24, 2023, hearing. It appears that Plaintiff's arguments solely concern the minor privilege permit.

right-of-way in front of that property; and (ii) may not: (A) interfere with pedestrian traffic; or (B) violate standards of accessibility as required by the ADA or other accessibility codes."

To erect an A-frame sign in compliance with the Police and Zoning ordinances, one must obtain the aforementioned minor privilege permit. In order to begin the application for a minor privilege permit, the applicant is required to "check a box to swear under the penalty of perjury" that he is "'the owner of the subject property, or is the duly authorized agent of the owner with full and specific consent and authorization to act for the owner for this application.'" (ECF No. 1, ¶ 18) (quoting the permit application). In this case, Planned Parenthood of Maryland, Inc. is the relevant property owner. (*Id.* ¶ 19.) Although he did not inquire, Plaintiff concluded that he would be unable to obtain consent for the permit from Planned Parenthood. (*Id.* ¶ 20.) In lieu of applying for a permit, Plaintiff's counsel sent a letter to counsel for the City on June 26, 2020, contending that the permit requirements violated Plaintiff's constitutional rights. (*Id.*) Plaintiff did not receive a response and subsequently resumed placing his signs on the sidewalk on July 13, 2020. (*Id.*)

Thereafter, on July 23, 2020, a City inspector issued a citation to Plaintiff for violating Art. 19, § 45-2. (*Id.* ¶ 21.) The citation charged Plaintiff with engaging in "[p]rohibited posting of signs on public property" and carried with it a fine of $500. (*Id.*) (internal quotation marks omitted). More specifically, Plaintiff was cited because he placed two A-frame signs on the sidewalk and "at least one sign . . . around a city pole." (*Id* ¶ 20.) However, the latter "is not the subject of this action." (*Id.*) Pursuant to direction under the citation, Plaintiff appealed the citation to the Environmental Control Board and the hearing officer found that Plaintiff illegally placed a sign on and around City poles, but expressly declined to address the legality

4

of his A-frame signs.  (*Id.* ¶¶ 22–24.)  The hearing officer reduced the fine from $500 to $10 in an opinion dated October 26, 2021.  (*Id.* ¶ 24; ECF No. 1-1 at 52–56.)

Plaintiff asserts that he has since ceased placing A-frame signs on the sidewalk outside of Planned Parenthood because he is "fearful of exercising his constitutionally protected rights."  (ECF No. 1, ¶ 25.)  During the April 24, 2023, hearing, Plaintiff stated that he has continued to protest in front of the Planned Parenthood almost daily, and most recently on April 21, 2023, three days prior to the hearing.  However, since receiving the citation, he does so without the use of his A-frame signs.

On October 10, 2022, approximately one year following the Environmental Control Board's finding, Plaintiff filed his two-count Complaint.  (ECF No. 1.)  In Count One, Plaintiff asserts that his freedom of speech under the First Amendment to the United States Constitution has been violated as the City's "interpretation and application of their permit requirement impose an unconstitutional restriction on constitutionally protected speech in traditional public fora."  (*Id.* ¶ 31.)  In Count Two, Plaintiff alleges that the City's regulations violate the Free Exercise Clause under the First and Fourteenth Amendments to the Constitution because he is unable to communicate his "sincerely held religious beliefs" and "views on abortions."  (*Id.* ¶ 46.)

On the same day, Plaintiff filed his Motion for Preliminary Injunction.  (ECF No. 2.) Plaintiff argues that, "[w]ithout justification," the City ordinances "ban [him] as a non-property owner from using signs on the public sidewalk, require [him] to overcome seemingly endless bureaucratic hurdles and pay excessive fees, allow [the City] unfettered discretion as to whether to approve or deny permits and what cost to charge, impermissibly treat secular activities more

favorable than [his] religious activities, and discriminate based on speaker and viewpoint." (ECF No. 2-2 at 14–15.)  As a result, Plaintiff contends that the City ordinances "are not narrowly tailored and do not leave open ample alternative channels of communication." (*Id.* at 16.)

On November 11, 2022, the City filed a Motion to Dismiss or in the Alternative for Summary Judgment. (ECF No. 6.) On November 18, 2022, Plaintiff filed a Motion to Defer consideration of the City's Motion to permit him to engage in discovery, arguing that, although he was "not unmindful of the apparent contradiction in simultaneously moving for Preliminary Injunction and requesting time to conduct additional discovery," he required formal discovery to "fully refute" the City's Motion. (ECF No. 13, ¶ 4.)

The Court heard oral arguments on April 24, 2023, and has DENIED Plaintiff's Motion for Preliminary Injunction (ECF No. 2) and Motion to Defer (ECF No. 13). (ECF No. 22.) In addition, the Court set deadlines for briefing on the City's Motion. (ECF No. 23.)

## STANDARD OF REVIEW

### I.     Preliminary Injunction

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *United States v. South Carolina*, 720 F.3d 518, 524 (4th Cir. 2013) (quoting *Univ. of Tx. v. Camenisch*, 451 U.S. 390, 395 (1981)). A preliminary injunction is an "extraordinary remed[y] involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001). "[M]andatory preliminary injunctions—those that alter rather than preserve the status quo—are disfavored," and should only be granted where "the

6

applicants' right to relief [is] indisputably clear." *Mtn. Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197, 216 n.8 (4th Cir. 2019) (citation omitted).

In determining whether to issue a preliminary injunction, the Court must follow the test set forth by the Supreme Court in *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008), which requires a showing that: (1) the movant is likely to succeed on the merits; (2) the movant is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities favors the movant; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20; *accord Roe v. Dep't of Def.*, 947 F.3d 207, 219 (4th Cir. 2020); *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014).

The Court cannot issue a preliminary injunction absent a "clear showing" that all four requirements are satisfied. *Leaders of a Beautiful Struggle v. Balt. Police Dep't*, 979 F.3d 219, 226 (4th Cir. 2020), *rev'd on other grounds*, 2 F.4th 330 (4th Cir. 2021); *accord Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013). The plaintiff "bears the burden of establishing that each of these factors supports granting the injunction." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). Thus, a court need not address all four *Winter* factors if one or more of those factors is not satisfied. *Henderson ex rel. NLRB v. Bluefield Hosp. Co., LLC*, 902 F.3d 432, 439 (4th Cir. 2018).

In addition, the movant must show more than a "grave or serious question for litigation"; instead, the moving party bears the "heavy burden" of making a "clear showing" that he satisfies all four factors. *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 345–47 (4th Cir. 2009); *see also Int'l Bhd. of Teamsters v. Airgas, Inc.*, 239 F. Supp. 3d 906, 912 (D. Md. 2017) ("Because a preliminary injunction is 'an extraordinary remedy,' it 'may only

be awarded upon a clear showing that the plaintiff is entitled to such relief.'" (quoting *Winter*, 555 U.S. at 22)). Still, an injunction "is not granted as a matter of course, and whether to grant the injunction still remains in the equitable discretion of the [district] court even when a plaintiff has made the requisite showing." *Bethesda Softworks, L.L.C. v. Interplay Entm't Corp.*, 452 F. App'x 351, 353 (4th Cir. 2011) (internal citations omitted).

## II. Federal Rule of Civil Procedure 56(d)

Under Federal Rule of Civil Procedure 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." A court may deny a Rule 56(d) request if "the additional evidence sought for discovery would not . . . by itself create[ ] a genuine issue of material fact sufficient to defeat summary judgment." *Ingle ex rel. Est. of Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006) (quoting *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995)); *Courtney-Pope v. Bd. of Educ. of Carroll Cnty.*, 304 F. Supp. 3d 480, 490 (D. Md. 2018). Where the moving party does not attach an affidavit to his request, the failure "is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (citations omitted).

## ANALYSIS

### I. Plaintiff's Motion for Preliminary Injunction (ECF No. 2)

Plaintiff contends that he is entitled to a preliminary injunction prohibiting the City's enforcement of police and zoning ordinances that "prevent him from using A-frame signs on

8

the public sidewalks outside the Planned Parenthood facility." (ECF No. 2-2 at 11.) As noted, in order to obtain a preliminary injunction, Plaintiff must make a "clear showing" that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities favors him; and (4) an injunction is in the public interest. *See Leaders of a Beautiful Struggle*, 979 F.3d at 226; *Winter*, 555 U.S. at 20.

As an initial matter, the Plaintiff has not proffered sufficient evidence that he has suffered or is likely to suffer "irreparable harm." *Winter*, 555 U.S. at 20. Plaintiff contends that his inability to use his A-frame signs constitutes a loss of First Amendment freedom, which causes irreparable harm. (*See* ECF No. 2-2 at 12.) However, Plaintiff conceded at the April 24, 2023, hearing that he continues to engage in protest activities in front of the Planned Parenthood facility. In fact, Plaintiff informed the Court that he engaged in such protest activity as recently as three days before the hearing. There has been no allegation, nor is there evidence in the record to demonstrate, that the City has attempted to stop Plaintiff from protesting in front of the Planned Parenthood. In the time since his citation, Plaintiff has been freely communicating with women entering the facility and handing out literature expounding on his views, just without the use of his desired A-frame signs.

Thus, the only limitation on Plaintiff's speech is his inability to erect A-frame signs on the public sidewalk in front of Planned Parenthood.[5] This is insufficient to support the issuance of a preliminary injunction. As the United States Court of Appeals for the Ninth

---

[5] Plaintiff contends that the A-frame signs are important to his protected free speech because their absence "have actively decreased his success in persuading women not to have abortions." (ECF No. 2-2 at 23.) However, as the Court noted during the hearing, there is no evidence to support this claim and it instead reflects Plaintiff's own perspective on his success.

Circuit aptly stated: "given the ample alternative modes of [communication] available," the Court "will not invalidate the [A-frame sign] bans merely because they restrict [Plaintiff's] preferred method of communication." *Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 827 F.3d 1192, 1202 (9th Cir. 2016).[6] Therefore, Plaintiff has not clearly demonstrated that he is likely to suffer irreparable harm in the absence of an injunction.

Moreover, in analyzing the irreparable harm requirement, the Court also considers whether the moving party exhibited "reasonable diligence" in seeking an injunction. *Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018). In other words, because "an application for preliminary injunction is based upon an urgent need for the protection of [a] Plaintiff's rights, a long delay in seeking relief indicates that speedy action is not required." *Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel*, 872 F.2d 75, 80 (4th Cir. 1989) (quoting *Skehan v. Bd. of Trs. of Bloomsburg State Coll.*, 353 F. Supp. 542, 543 (M.D. Pa. 1973)); *see also Majorica, S.A. v. R.H. Macy & Co.*, 762 F.2d 7, 8 (2d Cir. 1985) ("Lack of diligence, standing alone, may . . . preclude the granting of preliminary injunctive relief, because it goes primarily to the issue of irreparable

---

[6] In *Lone Star*, the Ninth Circuit considered the constitutionality of "five city ordinances that regulate mobile billboards." *Lone Star*, 827 F.3d at 1195. The ordinances were enforced against the appellants, who claimed that the ordinances "impermissibly restrict their freedom of speech in violation of the First Amendment." *Id.* The *Lone Star* Court noted that because the mobile billboard ordinances did not "single out a specific subject matter for differential treatment," nor was "any kind of mobile billboard exempted from regulation based on its content," they were properly analyzed under intermediate scrutiny. *Id.* at 1200. Of import here, in upholding the ordinances, the Ninth Circuit concluded that the fact that "only one form of expression," mobile billboards, was foreclosed by the regulations, leaving the appellants "free to disseminate their messages through myriad other channels, such as stationary billboards, bus benches, flyers, newspapers, or handbills . . . paint[ing] signs on vehicles and attach[ing] decals or bumper stickers," clearly indicated the availability of ample alternative modes of communication. *Id.* at 1202. Moreover, the Ninth Circuit determined that "[a]lthough mobile billboards are a unique mode of communication, nothing in the record suggests that Appellants' overall 'ability to communicate effectively is threatened,'" thereby finding that the ordinances survived intermediate scrutiny. *Id.* (quoting *Taxpayers for Vincent*, 466 U.S. at 812).

harm."); *Potomac Heritage Trail Ass'n, Inc. v. U.S. Dep't of Transp.*, No. CV DLB-22-2482, 2022 WL 7051160, at *18 (D. Md. Oct. 11, 2022) ("The plaintiffs' delay in seeking injunctive relief undermines their claims of irreparable injury."). In *Quince*, the United States Court of Appeals for the Fourth Circuit upheld the district court's denial of a preliminary injunction where the plaintiffs waited nine months to pursue an injunction. *See generally Quince*, 872 F.2d 75. Here, Plaintiff waited over one year after the Environmental Control Board issued a decision on his appeal, and over two years after the citation was issued, before seeking a preliminary injunction. Plaintiff has not provided any explanation for this delay. As a result, Plaintiff's allegation of irreparable harm is further undermined.

Additionally, the *Quince* Court noted that the delay was "quite relevant to balancing the parties' potential harms," thereby implicating the third *Winter* factor. *Quince*, 872 F.2d at 80. Thus, this year-long delay also weighs against Plaintiff in balancing the equities. *See Perry v. Judd*, 471 F. App'x 219, 224 (4th Cir. 2012) ("For 'equity ministers to the vigilant, not to those who sleep upon their rights.'" (quoting *Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 879 (1st Cir. 1995)).[7]

Regarding the fourth *Winter* factor, Plaintiff has not demonstrated that an injunction is in the public interest. Plaintiff asserts only that the public interest is favored due to the "critical nature of the First Amendment rights at issue." (ECF No. 2-2 at 14.) However, as noted, Plaintiff was not prohibited from exercising his First Amendment rights—he is only limited

---

[7] In addition, the Environmental Control Board's October 26, 2021, opinion states: "Any party aggrieved by this decision and order, may within thirty (30) calendar days of issuing of same, file a written appeal with the Board." (ECF No. 1-1 at 56.) There is no indication that Plaintiff exercised this right to appeal the decision of the Environmental Control Board.

11

in his use of A-frame signs. On the other hand, and as Defendants aptly note, the City's "ability to determine and act for general welfare of its inhabitants," specifically through enforcing municipal ordinances, is "what is at stake in this litigation." (ECF No. 8-1 at 10.) Accordingly, the public interest counsels against an injunction.

Because the Court has determined that Plaintiff failed to demonstrate the second, third, and fourth requirements to obtain the extraordinary relief inherent in issuing a preliminary injunction, as set out in *Winter*, 555 U.S. at 20, the Court need not analyze Plaintiff's likelihood of success on the merits. Nevertheless, the Court will provide a brief analysis pertaining to both of the Counts lodged in Plaintiff's Complaint below.

### A. Merits of Plaintiff's Freedom of Speech Claim (Count One)

When a plaintiff asserts a claim for free speech under the First Amendment, "[t]he first inquiry a court must undertake" is determining "whether the plaintiff has engaged in 'protected speech.'" *Goulart v. Meadows*, 354 F.3d 239, 246 (4th Cir. 2003) (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985)). "Political . . . rallies, demonstrations, and leafletting are forms of speech protected under the First Amendment." *Hotel Employees & Restaurant Employees Union, Local 100 v. N.Y. Dep't of Parks & Recreation*, 311 F.3d 534, 544 (2d Cir. 2002) (internal citations omitted). It is undisputed that Plaintiff's protests constitute protected speech under the First Amendment.

The right of access to public property, and the standards under which a limitation on that right are evaluated, differ depending on the "character of property at issue." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44 (1983). "In the traditional public forum, which includes the streets, sidewalks, parks, and general meeting halls, speakers' rights are at

their apex." *Steinburg v. Chesterfield Cnty., Plan. Comm'n*, 527 F.3d 377, 384 (4th Cir. 2008). In such a forum, the First Amendment "strictly limit[s]" a governmental entity's ability to "regulate private speech." *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 469 (2009) (citation omitted). However, "even in a public forum[,] the government may impose reasonable restrictions on the time, place, or manner of protected speech." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

As this Court has previously noted, "[t]he level of scrutiny a court applies to a legislative enactment in a First Amendment analysis depends on whether the statute is deemed content-based or content-neutral." *Maages Auditorium v. Prince George's Cnty., Md.*, 4 F. Supp. 3d 752, 762 (D. Md. 2014), *aff'd*, 681 F. App'x 256 (4th Cir. 2017). At the April 24, 2023, hearing, Plaintiff conceded that the ordinances are content neutral. Indeed, the ordinances are neutral because they do not "draw[ ] distinctions based on the message the speaker conveys." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). A content neutral statute warrants review under intermediate scrutiny, meaning that it must be "narrowly tailored to serve a significant governmental interest" and "leave open ample alternative channels for communication of the information" that the speaker wishes to communicate. *Clark v. Cmty. for Creative Non–Violence*, 468 U.S. 288, 293 (1984).[8]

---

[8] Plaintiff concedes, and the record makes clear, that the fine imposed on him by the Environmental Control Board was civil in nature, rather than criminal. However, even if Plaintiff did contend that his fine under the Police Ordinance constituted a criminal penalty, the Court is satisfied that the argument would be insufficient to invoke strict scrutiny under *Soderburg v. Carrion*, 999 F.3d 962 (2021), as that case is inapposite. In *Soderburg*, the Fourth Circuit concluded that strict scrutiny applied to an ordinance that threatened criminal contempt proceedings against those who violated it. *Id.* at 969. However, in *Soderburg*, the Fourth Circuit applied the Supreme Court's holding in *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975), which concerned "the publication of truthful information contained in official court records open to public inspection." *Cox Broadcasting*, 420 U.S. at 495. The information Plaintiff seeks to communicate in this case would not fall within *Cox Broadcasting*'s ambit, as it is not

It is well settled that a government has a significant interest in the "aesthetic interests protected by zoning laws," as well as in "protecting the 'health, safety, and general welfare of the public.'"  *"Q"-Lungian Enters., Inc. v. Town of Windsor Locks*, 272 F. Supp. 3d 289 (D. Conn. 2017) (quoting *Village of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365, 386–95 (1926)); *accord City of Ladue v. Gilleo*, 512 U.S. 43, 48 (1994) ("It is common ground that governments may regulate the physical characteristics of signs."); *Members of the City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 805 (1984) ("It is well settled that the state may legitimately exercise its police powers to advance esthetic values."); *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 129 (1978) ("[T]his Court has recognized, in a number of settings, that States and cities may enact land-use restrictions or controls to enhance the quality of life by preserving the character and desirable aesthetic features of a city."); *Berman v. Parker*, 348 U.S. 26, 32 (1954) ("Public safety, public health, morality, peace and quiet, law and order—these are some of the more conspicuous examples of the traditional application of the police power to municipal affairs."); *Kolbe v. Balt. Cnty., Md.*, 730 F. Supp. 2d 478, 480 (D. Md. 2010) (stating that "both traffic safety and aesthetics" have been recognized by courts as substantial government interests).

The Supreme Court case of *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490 (1981), is notably similar to the case *sub judice*.  There, the case concerned "the validity of an ordinance of the city of San Diego, Cal., imposing substantial prohibitions on the erection of outdoor advertising displays within the city." *Metromedia*, 453 U.S. at 493.  The city ordinance at issue

---

the sort of "publication of truthful information" that the *Soderburg* and *Cox Broadcasting* Courts sought to protect, nor is there a criminal penalty associated with the Police and Zoning ordinances.  As such, there is no basis to apply strict scrutiny to the ordinances at issue in this case.

14

permitted certain exceptions to the ban, including "on-site commercial advertising," but prohibited, among other things, "noncommercial communications using fixed-structure signs." *Id.* at 495–96. The Court ultimately concluded that the ordinances at issue did not offend the First Amendment, noting that the substantial precedent establishing traffic safety and "the appearance of the city" as substantial government interests rendered it "far too late to contend otherwise." *Id.* at 507–08.

Further, the Court explained that it was not the role of a court to determine whether the city had a "sufficient basis" to believe that billboards presented traffic hazards and were unattractive. *Id.* at 509. Indeed, as the Supreme Court stated in *Railway Express Agency*, 336 U.S. at 109, it would be "trespassing on one of the most intensely local and specialized of all municipal problems" to hold that a city regulation "had no relation" to its asserted interest in traffic control; there, the Court instead found that "[i]t is the judgment of the local authorities that it does have such a relation." *Id.*

In this case, the City has demonstrated that it has a significant governmental interest in the ordinances. It contends that the ordinances promote the health, safety, and welfare of the public; in particular, the City contends that the ordinances serve its interest in "maintaining and improving community appearance, eliminating visual clutter, ensuring traffic and pedestrian safety, preserving property values, and attracting economic development." (ECF No. 8-1 at 18.)

Defendants have also demonstrated that the ordinances are narrowly tailored. In the context of a content neutral regulation, "narrowly tailored" means that the government must "prove that no 'less restrictive alternative' would serve its purpose." *Cent. Radio Co. Inc. v. City*

*of Norfolk, Va.*, 811 F.3d 625, 633 (4th Cir. 2016) (citing *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813 (2000)).  Narrow tailoring does not require that the restriction be "the least restrictive or least intrusive means" of achieving the governmental interest.  *Ward*, 491 U.S. at 799 (internal citations and footnote omitted).  Rather, the narrow tailoring requirement is satisfied "so long as the regulation promotes a substantial government interest that would be achieved less effectively absent the regulation."  *Id.* (internal quotation marks and citation omitted).  In sum, "the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative."  *Id.* at 800.

Here, the ordinances are narrowly tailored to serve this interest, as they generally prohibit the use of A-frame signs, but permit a plethora of other forms of speech.  Indeed, the ordinances prohibit any person from posting private signs on public property, but also provide a "minor privilege permit" exception for tenants of the zoning district to post a single A-frame sign.  (ECF No. 8-1 at 16–17.)  As the Supreme Court stated in *Metromedia*, 453 U.S. at 508, "[i]f the city has a sufficient basis for believing that [the signs] are traffic hazards and are unattractive, then obviously the most direct and perhaps the only effective approach to solving the problems they create is to prohibit them."  Moreover, the *Metromedia* Court noted that a similar ordinance was not broader than necessary specifically *because* the city permitted certain exceptions, thereby "stop[ing] short of fully accomplishing its ends."  *Id.*  Thus, the Court concludes that the ordinances at issue in this case are narrowly tailored.

Finally, as described above, it is clear to this Court that there are ample alternatives for communication, as Plaintiff concedes that he is permitted to wear his sign, hold his sign, hand

out pamphlets, and speak to any person on the sidewalk. (ECF No. 2-2 at 23; ECF No. 16 at 12.) Notably, at the hearing of April 24, 2023, Plaintiff informed the Court that he did so as recently as three days before the hearing. Although Plaintiff focuses substantial attention on the requirements for obtaining a minor privilege permit, the Court need not reach the specifics of the permitting process at this juncture because Plaintiff has not presented a successful challenge to the ordinances themselves.

### B. Merits of Plaintiff's Free Exercise of Religion Claim (Count Two)

The Free Exercise Clause of the First Amendment "protects against laws that discriminate against or among religious beliefs or that restrict certain practices because of their religious conduct." *Alive Church of the Nazarene, Inc. v. Prince William Cnty., Va.*, 59 F.4th 92,108 (4th Cir. 2023) (citing *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532 (1993)). As Judge Chasanow of this Court has recently noted, the Free Exercise Clause only applies when the government burdens religious exercise. *Kim v. Bd. of Educ. of Howard Cnty.*, ___ F. Supp. 3d ___, DKC 21-0655, 2022 WL 17082368, at *8 (D. Md. Nov. 18, 2022) (citing *Fulton v. City of Phila., Pa.*, ___ U.S. ___, 141 S. Ct. 1868, 1876 (2021)). Indeed, "a violation of the Free Exercise Clause is predicated on coercion." *Sch. Dist. of Abington Twp., Pa. v. Schempp*, 374 U.S. 203, 223 (1963).

"The government burdens religious exercise when it directly 'prohibit[s]' or 'penal[izes]' religious conduct." *Kim*, 2022 WL 17082368, at *8 (quoting *Carson v. Makin*, ___ U.S. ___, 142 S. Ct. 1987, 1996 (2022)). As the Supreme Court explained in *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872 (1990): "[A] State would be 'prohibiting the free exercise [of religion]' if it sought to ban such acts or abstentions only

17

when they are engaged in for religious reasons, or only because of the religious belief that they display." *Id.* (quoting U.S. Const. amend. I).  In this way, the Free Exercise Clause directs courts to focus on the purpose of the government action being challenged.  *Id.*  Thus, "if prohibiting the exercise of religion (or burdening the activity . . .) is not the object" of the government action, "but merely the incidental effect of a generally applicable and otherwise valid provision, the First Amendment has not been offended."  *Id.* at 878.  The Supreme Court has even stated that it would take "obtuse reasoning to inject any issue of the 'free exercise' of religion" where "[n]o one is forced" to engage in or refrain from religious exercise.  *Zorach v. Clauson*, 343 U.S. 306, 311 (1952).

Here, the challenged ordinances are unconcerned with religious exercise; they neither prohibit nor compel religious conduct.  Importantly, Plaintiff has made no allegation that either the Police or Zoning ordinance was enacted for the purpose of suppressing religious expression.  Further, as discussed, Plaintiff has been freely engaging in protest activity outside of the Planned Parenthood.  Plaintiff contends that "his religious conviction compels him to use every effort available to dissuade women" from obtaining abortions, and he has continued to freely express his religious beliefs in front of the facility, merely without the use of A-frame signs.  Therefore, Plaintiff has not proffered evidence that the ordinances offend the Free Exercise Clause of the First Amendment.

## II.   Plaintiff's Motion to Defer (ECF No. 13)

Following the City's Motion (ECF No. 6), Plaintiff filed a Motion to Defer, pursuant to Federal Rule of Civil Procedure 56(d), requesting that the Court permit him to engage in discovery prior to considering the City's Motion.  (ECF No. 13 at 1–2.)  Plaintiff argues that

City's Motion is exclusively one for summary judgment because it includes attached affidavits, and that he is unable to present facts essential to his opposition without engaging in formal discovery. (*Id.*) The Motion to Defer was submitted in lieu of a response to the City's Motion.

Plaintiff misunderstands the significance of the alternative pleading. When a party submits a motion to dismiss or for summary judgment *in the alternative*, the court has discretion to determine which standard is implicated in deciding the motion. *See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011). The Court may exercise its discretion to consider the motion solely as one to dismiss, thereby considering only the complaint and any attached documents "integral to the complaint," *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007), and exclude any other extrinsic documents from its consideration. Plaintiff was obligated to respond to the City's Motion as one to dismiss, at a minimum, regardless of his request to defer consideration.

Nevertheless, Plaintiff's Motion to Defer fails to meet the requirements of Rule 56(d). As noted, Rule 56(d) requires a party to show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). The Fourth Circuit has made clear that the failure of the moving party to submit the required affidavit "is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Harrods Ltd.*, 302 F.3d at 244 (quotations and citations omitted). Plaintiff did not submit the required affidavit or declaration. This alone is sufficient to deny the Motion to Defer.

However, a failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery

is necessary." *Harrods*, 302 F.3d at 244–45.  Plaintiff has not made this showing.  Plaintiff asserts that he requires discovery to determine, among other things: "evidence as to the application process" for the planters on the sidewalk outside of the Planned Parenthood and "[e]vidence as to the permit process under Defendants' regulations." (ECF No. 13 at 2–3.)  However, this is public information, available on the City's website and is detailed in Plaintiff's own Motion for Preliminary Injunction. (*See* ECF No. 2-2 at 5–7.)  Plaintiff's other requests, which include "[e]vidence as to whether Defendants' regulatory scheme, as it applies in this case, 'advances' certain goals" and "whether Defendants have any evidence of actual impediment to pedestrian traffic," are irrelevant to the prosecution of this case. (ECF No. 13 at 2.)  Therefore, Plaintiff's has not demonstrated a need for discovery at this juncture.

Accordingly, the Court DENIES Plaintiff's Motion to Defer (ECF No. 13).  As detailed in the Order of April 24, 2023, the Court shall permit Plaintiff additional time to respond to the City's Motion to Dismiss or in the Alternative for Summary Judgment and shall consider that motion once it becomes fully briefed by the parties. (*See* ECF No. 23.)

## CONCLUSION

For the reasons stated on the record on April 24, 2023, and explained above, Plaintiff's Motion for Preliminary Injunction (ECF No. 2) and Motion to Defer (ECF No. 13) are DENIED.  The Court shall address the City's Motion upon the conclusion of the parties' respective briefings.  This Opinion is preceded by the Court's Orders of April 24, 2023 (ECF Nos. 22, 23).

Dated: April 28, 2023  _____/s/_____
Richard D. Bennett
United States District Judge