IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOHN ROSWELL,                          *

    *Plaintiff*,                        *

    v.                                  *          Civil Action No. RDB-22-2587

MAYOR AND CITY COUNCIL                 *
OF BALTIMORE,
                                       *
    *Defendant*.
                                       *

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## MEMORANDUM OPINION

Plaintiff John Roswell ("Plaintiff" or "Roswell") routinely stands on the sidewalk outside of a Planned Parenthood facility in Baltimore, Maryland "to communicate with women considering abortions as they enter or exit the facility." (ECF No. 1 ¶ 13.)[1]  Until a few years ago, Roswell often employed freestanding A-frame signs, which he placed on a public sidewalk directly outside of Planned Parenthood, to help present "information regarding abortion and its alternatives." (*Id.* ¶ 14.)  However, in July 2020, Roswell received a citation for "[p]rohibited posting of signs on public property," in violation of Baltimore City Code, Art. 19, § 45-2.  (*Id.* ¶ 21.)  As a result, Roswell stopped using A-frame signs, (*id.* ¶ 25), and on October 10, 2022, Plaintiff commenced this action against the Mayor and City Council of Baltimore ("Defendant" or the "City"),[2] alleging that the City had violated his First Amendment rights

---

[1] For clarity, this Memorandum Opinion cites to the ECF generated page number, rather than the page number at the bottom of the parties' various submissions, unless otherwise indicated.

[2] Plaintiff's Complaint named four Defendants: City of Baltimore; Brandon Scott, in his official capacity as Mayor of Baltimore; Alice Kennedy, in her official capacity as Commissioner of the Baltimore City Department of Housing & Community Development; and Christopher Johnston, in his official capacity as Inspector of the Baltimore City Department of Housing & Community Development.  (*See* ECF No. 1.)  On April 24, 2023,

to freedom of speech and free exercise of religion.  (*Id.* ¶¶ 29–44, 45–53.)

Presently pending before this Court is Defendant's Motion to Dismiss or in the Alternative Motion for Summary Judgment (the "City's Motion") (ECF No. 6), which was filed on November 7, 2022.   On November 18, 2022, Plaintiff filed a Motion to Defer consideration of the City's Motion (ECF No. 13), arguing that he required discovery in order to respond.  After Roswell's Motion to Defer was fully briefed (ECF Nos. 17, 18), the Court heard oral argument from the parties on April 24, 2023 on Roswell's Motion to Defer (ECF No. 13) as well as Plaintiff's then-pending Motion for Preliminary Injunction (ECF No. 2) (collectively, "Roswell's Motions").  (ECF Nos. 21, 31.)  For the reasons set forth on the record and supplemented by Memorandum Opinion (ECF No. 24), this Court denied Roswell's Motion for Preliminary Injunction and directed him to respond to the City's Motion to Dismiss.  (ECF No. 22, 23.)  Roswell filed his response on May 15, 2023.  (ECF No. 25.)

The Plaintiff filed an interlocutory appeal to the United States Court of Appeals for the Fourth Circuit.  Accordingly, this Court entered an Order staying the case pending that interlocutory appeal.  (ECF No. 32.)  The Fourth Circuit affirmed the denial of preliminary injunctive relief on December 19, 2023.  (ECF No. 33.)  Accordingly, the stay in this case shall be LIFTED as the Defendant's Motion to Dismiss or in the Alternative Motion for Summary Judgment (ECF No. 6) remains pending.

The parties' submissions have been reviewed and no additional hearing is necessary. Local Rule 105.6 (D. Md. 2023).  For the reasons that follow, the Defendant's Motion to

---

the Court dismissed from this case the individually-named Defendants—Brandon Scott, Alice Kennedy, and Christopher Johnston—as consented upon by Plaintiff, and recaptioned the case to reference the remaining Defendant as "Mayor and City Council of Baltimore" pursuant to Balt. City Charter, Art. I, § 1.  (ECF No. 23.)

Dismiss or in the Alternative Motion for Summary Judgment (ECF No. 6), construed as a motion for summary judgment, shall be GRANTED.  Specifically, SUMMARY JUDGMENT IS ENTERED in favor of Defendant on all counts.

## BACKGROUND

In ruling on a motion for summary judgment, this Court considers the facts and draws all reasonable inferences in the light most favorable to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

Plaintiff John Roswell regularly protests on the sidewalk outside of the Planned Parenthood located at 330 N. Howard Street in Baltimore, Maryland, to "communicate with women considering abortions as they enter or exit the facility."  (ECF No. 1 ¶ 13.)  Roswell presents women with "information regarding abortion and its alternatives" and displays a "visible demonstration of his deeply held religious convictions that human lives are being terminated inside the facility."  (*Id.* ¶ 14.)  To communicate these messages, Roswell "relied upon several stand-alone, A-frame signs" propped on the public sidewalk directly outside of the Planned Parenthood.  (*Id.* ¶ 15.)  The A-frame signs include statements such as "Unborn Babies Are Human and Feel Pain."  (*Id.*)  Roswell also verbally communicates his messages and distributes leaflets to the women entering and exiting the facility.  (*Id.*)

On January 22, 2020, an inspector with the Baltimore City Department of Housing & Community Development warned Roswell that he needed a permit to place the signs on the sidewalk and that he would otherwise be fined $500/day for violating a Baltimore City ordinance.  (*Id.* ¶ 16.)  That code, Baltimore City Code, Art. 19 (Police Ordinances), § 45-2 ("Signs-On or Affecting Public Property: Postings Prohibited") (the "police ordinance"),

states, in pertinent part:

> No person may post, place, or affix a sign: . . . (5) in any way that . . . (ii) protrudes into a street or sidewalk so as to interfere with the safe passage of the public; or (iii) otherwise poses a hazard to motorists, pedestrians, or cyclists; (6) on any other property owned, leased, or controlled by the City.

Plaintiff states that he then discovered that he needed two permits to erect his A-frame signs on the sidewalk to avoid the fine: (1) a "minor privilege" permit and (2) a "sign permit."[3]  (*Id.* ¶¶ 16, 17.)  He alleges that the filing fees for both permits "total more than $100."  (*Id.*)  He attaches to his Complaint a copy of the application for a minor privilege permit.  (*See* ECF No. 1-1 at 25–27.)

The Planned Parenthood facility in front of which Plaintiff protests is located on Howard Street, which is directly in front of the MTA Light Rail Path and part of the C-5-HS Zoning District.  (*See* ECF No. 6 at 6.)  In conjunction with the police ordinance, Baltimore City Code, Art. 32, § 17-201 (the "zoning ordinance"), only permits an individual to post a sign if the "Table 17-201: Sign Regulations" chart "expressly lists that sign type as allowed within that zoning district" and if "the sign complies with all other requirements of this title applicable to that sign type."  For the C-5-HS zoning district, Table 17-201 states that one A-frame sign is allowed per tenant with approval method "A," and a size restriction of 8 square foot per side, with a maximum 4-foot height.  Approval method "A" means "allowed."  Balt. City Code, Art. 32, § 1-205(b)(2)(i).  A-frame signs are governed by Baltimore City Code, Art. 32, § 17-401, which states that an A-frame sign is permitted only for "non-residential uses"

---

[3] As noted in this Court's April 28, 2023 Memorandum Opinion and Order, Plaintiff has not indicated what he means by a "sign permit," and Roswell did not provide clarity on this point during the April 24, 2023 hearing or in his Brief in Opposition to Defendant's Motion.  (*See* ECF No. 24 at 3 n.3; ECF No. 25.)  Accordingly, this Court construes Plaintiff's arguments to solely concern the minor privilege permit.

and: "(i) may only be placed: (A) on the same property as the non-residential use to which it relates, within 30 feet of that use's primary entrance; or (B) on the right-of-way in front of that property; and (ii) may not: (A) interfere with pedestrian traffic; or (B) violate standards of accessibility as required by the ADA or other accessibility codes."

To erect an A-frame sign in compliance with the police and zoning ordinances, one must obtain the aforementioned minor privilege permit.  In order to begin the application for a minor privilege permit, the applicant is required to "check a box to swear under the penalty of perjury" that he is "'the owner of the subject property, or is the duly authorized agent of the owner with full and specific consent and authorization to act for the owner for this application.'"  (ECF No. 1 ¶ 18) (quoting the application).  In this case, Planned Parenthood of Maryland, Inc. is the relevant property owner.  (*Id.* ¶ 19.)  Although he did not inquire, Roswell concluded that he would be unable to obtain consent for the permit from Planned Parenthood.  (*Id.* ¶ 20.)  In lieu of applying for a permit, Plaintiff's counsel sent a letter to counsel for the City on June 26, 2020, contending that the permit requirements violated Plaintiff's constitutional rights.  (*Id.*)  Plaintiff did not receive a response and subsequently resumed placing his signs on the sidewalk on July 13, 2020.  (*Id.*)

On July 23, 2020, a City inspector issued a citation to Plaintiff for violating Art. 19, § 45-2.  (*Id.* ¶ 21.)  The citation charged Roswell with engaging in "[p]rohibited posting of signs on public property" and imposed a fine of $500.  (*Id.*) (internal quotation marks omitted).  More specifically, Roswell was cited because he placed two A-frame signs on the sidewalk and "at least one sign . . . around a city pole."  (*Id.* ¶ 20.)  However, the latter "is not the subject of this action."  (*Id.*)  Pursuant to direction under the citation, Plaintiff appealed the citation to

the Environmental Control Board and the hearing officer found that Roswell illegally placed a sign on and around City poles, but expressly declined to address the legality of his A-frame signs. (*Id.* ¶¶ 22–24; ECF No. 1-1 at 55.) The hearing officer reduced the fine from $500 to $10 in an opinion dated October 26, 2021. (ECF No. 1 ¶ 24; ECF No. 1-1 at 52–56.)

Roswell asserts that, while he still regularly stands outside of the facility, he has since ceased placing A-frame signs on the sidewalk outside of Planned Parenthood because he is "fearful of exercising his constitutionally protected rights." (ECF No. 1 ¶ 25.) In his Brief in Opposition to Defendant's Motion, Roswell asserts that his "A-frame signs serve several important roles in his communication." (ECF No. 25 at 6.) Roswell claims that because women "often come from several directions at the same time," "often rush toward the Planned Parenthood entrance," or are escorted by Planned Parenthood employees or volunteers, the A-frame signs afforded him additional opportunity to communicate his message without speaking to them. (*Id.* at 6–8.) He further claims that the A-frame signs prompted communications with women, allowed him to communicate his message to passing traffic, and communicate to women being escorted into the facility by Planned Parenthood volunteers and employees. (*Id.* at 7.) He further notes that, in addition to communicating his message by speaking directly to the women, he passes women literature. (*Id.* at 8.) He claims that he "tried wearing the same signs," but the women "generally react more negatively than they did when his signs were on the ground and he was merely approaching with a smile and literature." (*Id.*) According to Roswell, wearing the signs makes it more difficult to approach the women entering the facility. (*Id.*)

On October 10, 2022, Plaintiff filed his two-count Complaint.[4] (ECF No. 1.)  In Count One, Plaintiff asserts that his freedom of speech under the First Amendment to the United States Constitution has been violated as the City's "interpretation and application of their permit requirement impose an unconstitutional restriction on constitutionally protected speech in traditional public fora." (*Id.* ¶ 31.)  In Count Two, Plaintiff alleges that the City's ordinances violate the Free Exercise Clause under the First and Fourteenth Amendments to the Constitution because he is unable to communicate his "sincerely held religious beliefs" and "views on abortions." (*Id.* ¶ 46.)  Plaintiff filed a Motion for Preliminary Injunction that same day.  (ECF No. 2.)

On November 11, 2022, the City filed the instant Motion to Dismiss or in the Alternative for Summary Judgment (the "City's Motion").  (ECF No. 6.)  In support of its Motion, Defendant submitted the declaration of David H. Framm, an employee of the Mayor and City Council of Baltimore's Department of Transportation, (ECF No. 6-2 at 2–3), as well as two exhibits—a map of the geographic area around 330 N. Howard Street, (*id.* at 5), and a map of the corresponding zoning area for that location, C-5-HS zoning district.  (*Id.* at 7–8.)

On November 18, 2022, Plaintiff filed a Motion to Defer consideration of the City's

---

[4]  Plaintiff attaches several exhibits to his Complaint, including emails between a public information officer with the Baltimore City Department of Housing & Community Development and a Diane Levero of Defend Life, (ECF No. 1-1 at 2–6); the Baltimore City Department of Transportation Minor Privilege Schedule amended November 9, 2016, (*id.* at 8–19); a portion of § 109.6 "Fee Schedules" of the Baltimore City Building, Fire, and Related Code amended June 7, 2020, (*id.* at 21–23); the Baltimore City Department of Transportation Application for Minor Privilege revised June 1, 2015, (*id.* at 25–27); a screenshot of a portion of the Baltimore City Department of Housing & Community Development online permit application, (*id.* at 29); a letter dated June 26, 2020 addressed to Kathleen Byrne, the Assistant Commissioner for Litigation and SIU with the Baltimore City Department of Housing & Community Development, from Plaintiff's counsel, (*id.* at 31–38); an email dated July 7, 2020 addressed to Byrne from Plaintiff's counsel, (*id.* at 40); the July 2020 citation, (*id.* at 42–45); a thread of emails with the subject "Baltimore v. Roswell" sent between Plaintiff's counsel and various City employees between September 13, 2021 and September 22, 2021, (*id.* at 47–50); and the October 26, 2021 opinion of the Environmental Control Board for Baltimore City, (*id.* at 52–56).

Motion to permit him to engage in discovery, arguing that, although he was "not unmindful of the apparent contradiction in simultaneously moving for Preliminary Injunction and requesting time to conduct additional discovery," he required formal discovery to "fully refute" the City's Motion.  (ECF No. 13 ¶ 4.)

After Plaintiff's Motion for Preliminary Injunction and Motion to Defer ("Roswell's Motions") were fully briefed (ECF Nos. 8, 16, 17, 18), the Court heard oral argument from the parties on April 24, 2023 on Roswell's then-pending motions.  (ECF Nos. 21, 31.)  After the Court denied Roswell's Motions for the reasons set forth on the record, (*id.*), the Court issued two Orders (ECF No. 22, 23) and docketed a Memorandum Opinion supplementing the basis for its rulings.  (ECF No. 24.)  Therein, the Court directed Plaintiff to respond to the City's Motion to Dismiss, (ECF No. 23 ¶ 3; ECF No. 24 at 20), which Roswell filed on May 15, 2023.  (ECF No. 25.)

On May 24, 2023, Roswell appealed this Court's denial of his Motion for Preliminary Injunction to the United States Court of Appeals for the Fourth Circuit.  (ECF No. 26.)  On August 10, 2023, this Court issued an Order staying this case pending the outcome of that appeal.  (ECF No. 32.)  On December 19, 2023, the Fourth Circuit affirmed this Court's judgment by unpublished per curiam opinion.  (ECF No. 33); *Roswell v. Mayor of Balt.*, No. 23-1567, 2023 U.S. App. LEXIS 33595 (4th Cir. Dec. 19, 2023).  Therein, the Fourth Circuit noted that Roswell "spends the lion's share of his brief discussing the merits of his First Amendment claims, dedicating just a handful of pages" to irreparable harm, balance of the equities, and public interest. *Roswell*, 2023 U.S. App. LEXIS 33595, at *4.  The Fourth Circuit summarized Roswell's arguments with respect to those requirements as follows:

8

"Roswell baldly asserts that his inability to use sidewalk signs constitutes irreparable harm; attempts to downplay his substantial delay in seeking an injunction; and insists that there can be no public interest in permitting the City to violate his First Amendment rights by enforcing its allegedly unconstitutional ordinances." *Id.* The Fourth Circuit described such arguments as "broad" and "largely conclusory." *Id.* Because a party seeking a preliminary injunction must establish that he satisfies all four requirements from the test set forth by the Supreme Court in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008), the Fourth Circuit explained that the Court "need not reach—and [] express[ed] no opinion on—the question of whether Roswell is likely to succeed on the merits of his claims." *Roswell*, 2023 U.S. App. LEXIS 33595, at *4 n.2.

## STANDARD OF REVIEW

The City's Motion is styled as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Federal Rule of Civil Procedure 56. When a party submits a motion that is one to dismiss or alternatively for summary judgment, the court has discretion to determine which standard is implicated in deciding the motion. *Kensington Vol. Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011).

Typically, when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). To the extent that grounds for dismissal are based solely on the contents of the complaint, the Court may dismiss under Rule 12(b)(6) if the complaint does not allege

9

enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pled allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Rule 12(d) requires courts to treat a Rule 12(b)(6) motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. FED. R. CIV. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some indication that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (internal citation omitted). Here, the notice requirement has been satisfied by the title of the City's Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d) explaining why "for specified reasons, it cannot present facts essential to justify its opposition," FED. R. CIV. P. 56(d), or otherwise put the district court on notice of the reasons why summary judgment is premature. *See Harrods, Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002).

While Roswell previously filed a Rule 56(d) Motion requesting that the Court permit

him to engage in discovery prior to considering the City's Motion, (ECF No. 13 at 1–2), this Court noted in its April 28, 2023 Memorandum Opinion that Roswell's Motion to Defer "fail[ed] to meet the requirements of Rule 56(d)," which requires a party to show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." (ECF No. 24 at 19.)  Therein, the Court explained that, not only did Plaintiff fail to submit the required affidavit or declaration, but Roswell also had not demonstrated a need for discovery.  (*Id.* at 19–20.)  His later filed Brief in Opposition to Defendant's Motion does not attempt to provide a Rule 56(d) affidavit or demonstrate a need for discovery.  Instead, Plaintiff notes that the City's Motion "is mostly accurate in what it states," though Roswell claims the City's recitations are "selective and incomplete." (ECF No. 25 at 4.)  Under these circumstances, the Court will construe the City's Motion as a Motion for Summary Judgment.

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In assessing the motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The Court may rely only on facts supported in the record, not simply assertions in the pleadings.  *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003).  The nonmoving party has the burden to show a genuine dispute on a material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (noting a nonmoving party must "do more than simply show that here is some metaphysical doubt as to the material facts").  A fact is "material" if it "might affect the

outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.  A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party.  *Id.* at 248–49.

## ANALYSIS

Through his Complaint, Roswell contends that the City's minor privilege permit requirement—articulated in Baltimore City Code, Art. 19, § 45-2 (the "police ordinance") and Art. 32, § 17-201 (the "zoning ordinance") (collectively, the "ordinances")—violates his First Amendment right to freedom of speech (Count One) and free exercise of religion (Count Two).  The City moves for summary judgment on both counts.  (ECF No. 6.)  This Court briefly addresses Roswell's standing before discussing each of Roswell's challenges to the City's ordinances.

### I.     Standing

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'"  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (quoting U.S. CONST. art. III, § 2).  The doctrine of standing helps identify "the 'Cases' and 'Controversies' that are of the justiciable sort referred to in Article III."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  Standing is a jurisdictional issue that requires three elements: injury in fact, causation, and redressability.  *Id.* at 560–61.

An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."  *Id.* at 560.  "Allegations of possible future injury do not satisfy the requirements of Art. III."  *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990).

12

Roswell alleges that the ordinances chill his speech and prevent him from using his A-frame signs due to fear of enforcement. A plaintiff may establish an injury-in-fact "by a sufficient showing of self-censorship," that is, by demonstrating that he was "chilled" from engaging in free expression. *Cooksey v. Futrell*, 721 F.3d 226, 235 (4th Cir. 2013) (quoting *Benham v. City of Charlotte*, 635 F.3d 129, 135 (4th Cir. 2011)) (internal quotation marks omitted). Any alleged "chilling effect" must be objectively reasonable, and "[s]ubjective or speculative accounts" of a chilling effect are insufficient to establish an injury-in-fact. *Id.* at 236 (quoting *Benham*, 635 F.3d at 135). Accordingly, "[g]overnment action will be sufficiently chilling when it is likely to deter a person of ordinary firmness from the exercise of First Amendment rights." *Id.* (quoting *Benham*, 635 F.3d at 135).

Roswell has alleged injury caused by the City's ordinances. He has previously erected A-frame signs that would require permits under the current act, and was cited for doing so on one occasion. He has indicated a desire to engage in similar speech, and he has plausibly claimed that he is deterred from utilizing A-frame signs because of a credible fear that the City will enforce the "police ordinance" against his permitless signs.

Roswell satisfies the other two standing requirements, causation and redressability. Causation for purposes of standing requires that the injury be "fairly traceable to the challenged conduct of the defendant," and redressability requires that a favorable decision would meaningfully redress the alleged injury. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan*, 504 U.S. at 560–61; *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). Here, the City has the authority to enforce the regulations, and declaring the ordinances unconstitutional would redress Roswell's alleged injury.

## II.     Plaintiff's Freedom of Speech Claim

The First Amendment, applicable to the States through the Fourteenth Amendment, provides that: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."  U.S. CONST. amend. I; *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015); *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 749 n.1 (1976).

Where, as here, a plaintiff asserts a claim for free speech under the First Amendment, "[t]he first inquiry a court must undertake" is determining "whether the plaintiff has engaged in 'protected speech.'"  *Goulart v. Meadows*, 345 F.3d 239, 246 (4th Cir. 2003) (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985)).  "Political . . . rallies, demonstrations, and leafletting are forms of speech protected under the First Amendment." *Hotel Emps. & Rest. Emps. Union, Loc. 100 v. N.Y. Dep't of Parks & Recreation*, 311 F.3d 534, 544 (2d Cir. 2002) (internal citations omitted).  As was noted in this Court's April 28, 2023 Memorandum Opinion, it is undisputed that Roswell's protests constitute protected speech under the First Amendment.

The right of access to public property, and the standards under which a limitation on that right are evaluated, differ depending on the "character of property at issue."  *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 44 (1983).  "In the traditional public forum, which includes the streets, sidewalks, parks, and general meeting halls, speakers' rights are at their apex." *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 384 (4th Cir. 2008).  In such a forum, the First Amendment "strictly limit[s]" a governmental entity's ability to

"regulate private speech." *Pleasant Grove City v. Summum*, 555 U.S. 460, 469 (2009) (citing *Cornelius*, 473 U.S. at 800). However, "even in a public forum[,] the government may impose reasonable restrictions on the time, place, or manner of protected speech." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

As Judge Chasanow of this Court has noted, "[t]he level of scrutiny a court applies to a legislative enactment in a First Amendment analysis depends on whether the statute is deemed content-based or content neutral." *Maages Auditorium v. Prince George's Cnty.*, 4 F. Supp. 3d 752, 762 (D. Md. 2014), *aff'd*, 681 F. App'x 256 (4th Cir. 2017). The police ordinance states, in pertinent part: "No person may post, place, or affix a sign: . . . (5) in any way that . . . (ii) protrudes into a street or sidewalk so as to interfere with the safe passage of the public; or (iii) otherwise poses a hazard to motorists, pedestrians, or cyclists; (6) on any other property owned, leased, or controlled by the City." Balt. City Code, Art. 19, § 45-2. In conjunction with the police ordinance, the zoning ordinance only permits an individual to post a sign if the "Table 17-201: Sign Regulations" chart "expressly lists that sign type as allowed within that zoning district" and if "the sign complies with all other requirements of this title applicable to that sign type." Balt. City Code, Art. 32, § 17-201. For the C-5-HS zoning district, Table 17-201 states that one A-frame sign is allowed per tenant with approval method "A," and a size restriction of 8 square foot per side, with a maximum 4-foot height. Approval method "A" means "allowed." Balt. City Code, Art. 32, § 1-205(b)(2)(i). A-frame signs are governed by Baltimore City Code, Art. 32, § 17-401, which states that an A-frame sign is permitted only for "non-residential uses" and: "(i) may only be placed: (A) on the same property as the non-residential use to which it relates, within 30 feet of that use's primary entrance; or (B) on

the right-of-way in front of that property; and (ii) may not: (A) interfere with pedestrian traffic; or (B) violate standards of accessibility as required by the ADA or other accessibility codes."

At the April 24, 2023 hearing, Plaintiff conceded that the ordinances are content neutral. (ECF No. 31 at 18 ¶¶ 9–14; 19 ¶¶ 1–5.) Nevertheless, in his Brief in Opposition to Defendant's Motion, Roswell suggests that strict scrutiny should apply.[5] (ECF No. 25 at 4, 25–28.) Relevant to Count One, Roswell suggests that the regulations are subject to strict scrutiny because they improperly distinguish between speakers (i.e., between business owners/tenants of the adjacent property and those who, like Roswell, have no such property interest). (*Id.* at 4, 25–26.) Roswell also suggests that strict scrutiny should apply because the regulations violate his free exercise of religion. (ECF No. 25 at 4, 26–28.)

On speaker-based distinctions, the Supreme Court has stated that "the fact that a distinction is speaker based does not . . . automatically render the distinction content neutral" because a speaker-based distinction can "reflect[] a content preference." *Reed*, 576 U.S. at 170 (quoting *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 658 (1994)). The Supreme Court also noted that such a distinction was the beginning of the inquiry, not the end. *Id.* at 170–71. Here, Plaintiff asks this Court to find that zoning ordinances cannot distinguish between the owners

---

[5] As noted in this Court's April 28, 2023 Memorandum Opinion (ECF No. 24), Roswell concedes, and the record makes clear, that the fine imposed on him by the Environmental Control Board was civil in nature, rather than criminal, and even if Plaintiff argued that his fine under the Police Ordinance constituted a criminal penalty, the Court is satisfied that the argument would be insufficient to invoke strict scrutiny under *Soderburg v. Carrion*, 999 F.3d 962 (2021), as that case is inapposite. (*Id.* at 13–14 n.8.) In *Soderburg*, the Fourth Circuit concluded that strict scrutiny applied to an ordinance that threatened criminal contempt proceedings against those who violated it. *Id.* at 969. However, in *Soderburg*, the Fourth Circuit applied the Supreme Court's holding in *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975), which concerned "the publication of truthful information contained in official court records open to public inspection." *Cox Broadcasting*, 420 U.S. at 495. The information Plaintiff seeks to communicate in this case would not fall within *Cox Broadcasting*'s ambit, as it is not the sort of "publication of truthful information" that the *Soderburg* and *Cox Broadcasting* courts sought to protect, nor is there a criminal penalty associated with the police and zoning ordinances. As such, there is no basis to apply strict scrutiny to the ordinances at issue in this case.

and tenants of adjacent properties utilizing A-frame signs for non-residential uses and those

with no such property interest without running afoul of First Amendment principles.  Fatal to

Roswell's position is the simple fact that the regulations do not "target speech based on its

communicative content."  *Id.* at 163; *Ward*, 491 U.S. at 791 (explaining that a regulation can

be content neutral even where it "has an incidental effect on some speakers or messages but

not others").  Instead, the City has provided reasons unrelated to the content of the signs.  *See*

*Covenant Media of S.C., LLC v. City of N. Charleston*, 493 F.3d 421, 434 (4th Cir. 2007) (noting

that interests proffered by the city, including traffic safety and aesthetics, were unrelated to the

content of messages).  Moreover, the regulations at issue merely distinguish between those

with interest in the adjacent property and those without such interest.  The regulations do not

require an official to examine the content of the A-frame sign, though officials may have to

examine whether the sign is being used for non-residential purposes.  At bottom, the

regulations at issue do not "single out any topic or subject matter for differential treatment."

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 71 (2022).

Because the regulations are content neutral under Fourth Circuit and Supreme Court

precedent, this Court reviews under the intermediate scrutiny standard of review.  Intermediate

scrutiny requires that the regulations be "narrowly tailored to serve a significant governmental

interest" and "leave open ample alternative channels for communication of the information"

that the speaker wishes to communicate.  *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288,

293 (1984).  "[A] regulation need not be the least speech-restrictive means of advancing the

Government's interests."  *Turner Broad. Sys.*, 512 U.S. at 662.  In this context, narrow tailoring

requires that the chosen means do not "burden substantially more speech than is necessary to further the government's legitimate interests." *Ward*, 491 U.S. at 799.

Such is the case here.  The police ordinance explicitly states: "No person may post, place, or affix a sign: . . . (5) in any way that . . . (ii) protrudes into a street or sidewalk so as to interfere with the safe passage of the public; or (iii) otherwise poses a hazard to motorists, pedestrians, or cyclists; (6) on any other property owned, leased, or controlled by the City." Balt. City Code, Art. 19, § 45-2.  The City contends that the ordinances promote the health, safety, and welfare of the public; in particular, the City contends that the ordinances serve its interest in "maintaining and improving community appearance, eliminating visual clutter, ensuring traffic and pedestrian safety, preserving property values, and attracting economic development."  (ECF No. 6 at 12–13.)

As was noted in this Court's April 28, 2023 Memorandum Opinion, it is well settled that a government has a significant interest in the "aesthetic interests protected by zoning laws," as well as in "protecting the 'health, safety, and general welfare of the public.'" (ECF No. 24 at 14 (citing "*Q*"-*Lungian Enters., Inc. v. Town of Windsor Locks*, 272 F. Supp. 3d 289 (D. Conn. 2017) (quoting *Vill. of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 386–95 (1926)); *accord City of Ladue v. Gilleo*, 512 U.S. 43, 48 (1994) ("It is common ground that governments may regulate the physical characteristics of signs."); *Members of the City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 805 (1984) ("It is well settled that the state may legitimately exercise its police powers to advance esthetic values."); *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 129 (1978) ("[T]his Court has recognized, in a number of settings, that States and cities may enact land-use restrictions or controls to enhance the quality of life by preserving the

character and desirable aesthetic features of a city."); *Berman v. Parker*, 348 U.S. 26, 32 (1954) ("Public safety, public health, morality, peace and quiet, law and order—these are some of the more conspicuous examples of the traditional application of the police power to municipal affairs."); *Kolbe v. Balt. Cnty.*, 730 F. Supp. 2d 478, 480 (D. Md. 2010) (stating that "both traffic safety and aesthetics" have been recognized by courts as substantial government interests))); *see also Metromedia, Inc. v. City of San Diego*, 453 U.S. 490 (1981).  In short, common sense and the holdings of prior cases are sufficient to establish a significant interest.  *Billups v. City of Charleston*, 961 F.3d 673, 685 (4th Cir. 2020) (quoting *Reynolds v. Middleton*, 779 F.3d 222, 227 (4th Cir. 2015)).  "When it is obvious that a challenged law serves a significant governmental interest, we do not require that the government produce evidence so demonstrating."  *Id.*

With respect to narrow tailoring, Roswell alleges that the City's ordinances "are not the least restrictive means to accomplish any permissible purpose and restrict substantially more speech than necessary."  (ECF No. 1 ¶ 41.)  In his Brief in Opposition to Defendant's Motion, Roswell contends that the City is required to show "actual evidence" that "lesser restrictions will not do."  (ECF No. 25 at 14–17).  While Roswell is correct that this Circuit's precedent requires the government "produce evidence demonstrating that it seriously undertook to utilize" existing laws or "attempted to use less intrusive tools readily available to it" to achieve the proffered aims, this does not sustain the free speech theory advanced by Roswell.  *Billups*, 961 F.3d at 689–90 (emphasis added) (internal quotation marks and citation omitted); *see also Reynolds*, 779 F.3d at 229 (explaining that "argument unsupported by the evidence will not suffice to carry the government's burden"); *McCullen v. Coakley*, 573 U.S. 464, 496 (2014) ("Given the vital First Amendment interests at stake, it is not enough for [the government]

simply to say that other approaches have not worked."). Simply stated, the evidentiary gap that Roswell points to is filled by common sense. *See Reynolds*, 779 F.3d at 228–29; *Sharpe v. Winterville Police Dep't*, 59 F.4th 674, 682 (4th Cir. 2023). As discussed above, the City has an interest in promoting aesthetics and protecting the health, safety, and general welfare of the public. The City would less effectively advance these interests if it allowed permitless A-frame signs to degrade its aesthetics and, more importantly, threaten the safe passage of pedestrians, removing such signs only after such hazards materialize, instead of establishing a prophylactic permitting scheme.

Finally, the ordinances leave open ample alternative channels for communication. This second prong of intermediate scrutiny ensures that the regulated speaker's message is not lost from the public square. *See Ward*, 491 U.S. at 791. The challenged law must "provide[] avenues for the more general dissemination of a message." *Ross v. Early*, 746 F.3d 546, 559 (4th Cir. 2014). Here, Roswell is permitted to wear his sign, hold his sign, hand out pamphlets, and speak to any person on the sidewalk. (ECF No. 24 at 16–17; ECF No. 25 at 18–22.) While Roswell contends that these alternatives are insufficient "because of the unique circumstances in which Plaintiff speaks," (ECF No. 25 at 3), the available alternatives "need not be the speaker's first or best choice or provide[] the same audience or impact for the speech." *Ross*, 746 F.3d at 559. Roswell has ample alternative means by which to communicate his message. Accordingly, the City is entitled to summary judgment on Count One.[6]

---

[6] This Court briefly discusses Plaintiff's cursory claim that the ordinances are void for vagueness. (ECF No. 1 ¶ 37.) The Supreme Court has found that a law or ordinance is unconstitutionally vague, pursuant to the Due Process Clause of the Fifth Amendment, if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008). This doctrine addresses two due process concerns: first, that "regulated parties should know what is required of them so they may act accordingly," and second, that

### III.    Plaintiff's Free Exercise of Religion Claim

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. CONST. amend. I. "The Fourteenth Amendment has rendered the legislatures of the states as incompetent as Congress to enact such laws." *Cantwell v. Conn.*, 310 U.S. 296, 303 (1940). "[T]he protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532 (1993). In such instances, state action is constitutionally valid only if it is narrowly tailored to achieve a compelling state interest. *Id.* at 546. However, "the Free Exercise Clause does not inhibit enforcement of otherwise valid regulations of general application that incidentally burden religious conduct." *Christian Legal Soc. Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 697 n.27 (2010) (citing *Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 878–82 (1990)); *Fulton v. City of Phila.*, 141 S. Ct. 1868, 1876 (2021) (explaining the Free Exercise Clause does not apply when the government does

---

"precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). However, the void-for-vagueness doctrine stems from the Due Process Clause of the Fifth Amendment, rather than from the First Amendment. *See Williams*, 553 U.S. at 304. Thus, in the First Amendment context, its requirements are "relaxed." In *North Carolina Right to Life, Inc. v. Leake*, 525 F.3d 274 (4th Cir. 2008), the Fourth Circuit determined that an ordinance was unconstitutionally vague because it "'unquestionably chill[ed] a substantial amount of political speech.'" *Id.* at 285 (quoting *Fed. Election Comm'n v. Wis. Right To Life, Inc.*, 551 U.S. 449, 469 (2007)). The Court reasoned that the statute's "open-ended terms provide little *ex ante* notice to political speakers as to whether their speech will be regulated" and "[i]nstead, speakers are left to guess and wonder whether a regulator, applying supple and flexible criteria, will make a post hoc determination that their speech is regulable as political advocacy." *Id.* at 284. Among these concerns, the Fourth Circuit specifically noted that the "unguided discretion given to the State to decide when it will move against political speech and when it will not" violates the First Amendment. *Id.* at 285. Assuming that Roswell can bring a vagueness challenge, *Holder v. Humanitarian Law Project*, 561 U.S. 1, 20 (2010) ("[A] plaintiff whose speech is clearly proscribed cannot raise a successful vagueness claim."), the ordinances are not unconstitutionally vague, as they do not afford the City "unguided discretion."

not "burden[] . . . religious exercise").

The government burdens religious exercise when it directly "prohibit[s]" or "penal[izes]" religious conduct, or if it "indirect[ly] coerc[es]" someone into forgoing religious conduct to obtain a desirable public benefit." *Carson v. Makin*, 596 U.S. 607, 778 (2022) (internal citations omitted).  Here, the challenged ordinances are unconcerned with religious exercise.  They neither prohibit nor compel religious conduct.  And even if the ordinances did burden religious exercise, a law that "incidentally burden[s] religion" does not violate the Free Exercise Clause if it is "neutral and generally applicable." *Fulton*, 141 S. Ct. at 1876.  For the reasons set forth above in the Court's discussion of Roswell's right to free speech, the Court determines that Roswell's claim concerns neutral ordinances of general applicability that incidentally burden Plaintiff's religious beliefs.  The Fourth Circuit has reasoned that "generally applicable and religion-neutral laws virtually never violate the Free Exercise Clause." *Brzonkala v. Va. Polytechnic Inst. & State Univ.*, 169 F.3d 820, 881 (4th Cir. 1999).  The challenged ordinances are no exception.  Accordingly, the City is entitled to summary judgment on Count Two.

## CONCLUSION

For the reasons stated above, the Defendant's Motion to Dismiss or in the Alternative Motion for Summary Judgment (ECF No. 6), construed as a Motion for Summary Judgment, is GRANTED and SUMMARY JUDGMENT IS ENTERED in favor of the City on all counts.

A separate Order follows.


Dated: January 19, 2024

                                        /s/
                                        _____
                                        Richard D. Bennett
                                        United States Senior District Judge